IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

WILLIAM CUNNINGHAM,

       Plaintiff,

v.                              Case No. 6:05-cv-00940

PARKERSBURG HOUSING AUTHORITY,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

On November 28, 2005, Plaintiff filed a Complaint challenging the constitutionality of 42 U.S.C. § 13663[1], which prohibits lifetime registered sex offenders from receiving public housing assistance.  (Docket sheet document # 2).  Pending are the following motions: Plaintiff's Motion for Summary Judgment (# 21), Defendant's Motion to Dismiss (# 22), and Plaintiff's Motion for Full Adjudication (# 24).  This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are undisputed and have been stipulated by the parties:

---

[1] Plaintiff's Complaint improperly lists the statute as "42 U.S.C. § 13368," concerning "ownership of coal bed methane," which is completely unrelated to this case.

Following a trial by jury on September 24, 1993, Plaintiff was found guilty in Case No. 93-MAP-14 in the Circuit Court of Wood County, West Virginia, of sexual abuse in the third degree involving a victim less than 16 years of age. (# 20 at 2, ¶ 4). As a result of that conviction, Plaintiff is a lifetime sex offender registrant within the meaning of West Virginia Code § 15-12-4(a)(2), part of the West Virginia Sex Offender Registration Act (hereinafter the "WVSORA"). (Id., ¶ 5).

By application dated June 2, 2004, Plaintiff made preliminary application to the Parkersburg Housing Authority (hereinafter the "PHA" or "defendant") for Section 8 public housing assistance. (Id., ¶ 6). On August 10, 2005, Plaintiff was notified of the denial of public housing assistance by the PHA because he was a lifetime registered sex offender under the WVSORA. (Id., ¶ 7).

Plaintiff appealed the denial of Section 8 benefits, and on August 31, 2005, the denial was upheld by the PHA's hearing officer, solely based upon a finding that Plaintiff was a lifetime registered sex offender under the WVSORA. (Id., ¶¶ 8, 9 and 10).

On November 28, 2005, Plaintiff filed his Complaint which states in pertinent part:

> The plaintiff would like it to be known that among the states there is no uniform standard of who is or isn't a life time registree. South Carolina for instance says everyone is a lifetime registree. In West Virginia and many other states other criteria determines whether or not an individual is a lifetime registree.

The allegations the plaintiff makes include[] that the government cannot constitutionally decide where someone can and cannot live.  That isn't a function of government see <u>Smith v. Doe</u> 538 U.S. 84.  The Supreme Court allowed the Alaska Registration system for Sex Offenders ("SOs") to exist as a new type of civil administration system.  The high court concluded that registration wasn't after the fact punishment because <u>it doesn't restrict movement</u>.  Laws such as [42 U.S.C. § 13663] certainly violate[] this constitutional decision. Being denied housing on this basis is certainly a violation of the rights of Americans.

(# 2 at 1).

On April 28, 2006, Plaintiff filed a Motion for Summary Judgment (# 21), in which he offered two exhibits in support of the claim or claims raised in his Complaint.  The first exhibit is an amicus curiae brief filed in the United States Supreme Court by the Association for the Treatment of Sexual Abusers in support of a petition for a writ of certiorari, in the case of <u>Doe v. Miller</u>, No. 05-428, on appeal from the United States Court of Appeals for the Eighth Circuit.  (# 21, Ex. 1).  The second exhibit is a copy of a study completed by the United States Department of Justice ("DOJ"), entitled "Recidivism of Sex Offenders Released from Prison in 1994."  (<u>Id.</u>, Ex. 2).

Plaintiff's Motion for Summary Judgment asserts that the DOJ study shows an overall re-offense rate of 5.5% for all sex offenders and 2.2% for child molesters.  (# 21 at 1).  Plaintiff's motion further states:

Until the 1994 study the US has had no real study of re-offense rates of sexual offenders.  Most information has come from hyped up numbers from old Hansen studies done in Canada.  The government simply assumes that

3

popular myth is true.  There is some unbelievable and statistically impossible high rate of re-offense among all sex offenders and that "knee jerk" improperly thought through laws are the answer.

The plaintiff believes that an irresponsibility on the part of law makers and believes that many residency restrictions that are appearing nationwide and specifically 42 USC 13663 in this case isn't justifiable when weighted against the true "possible threat" from sex offenders.  Sexual offenders have one of the lowest re-offense rates there are (Exhibit E-2).  Yet 42 USC 13663 says "dangerous" offenders and broadly states that "anyone with a life-time registration" status in any state is dangerous (specifically or implied).  This cannot be true and may even be fraudulent as the states have no uniform standards saying that a lifetime offender is dangerous.  WV does not make the assertion that lifetime registrant offenders are anymore dangerous than non-lifetime registrants and the Parkersburg Housing Authority and the US HUD allows felons of more serious crimes than the plaintiff has ever been accused of with much higher re-offense rates than sexual offenders residency after so many years.  42 USC 13663 is completely fraudulent on its face and in an implied manner.

* * *

In order for a law to be made it must have some value for the public good.  And with re-offense rates as low as sex offenders it makes no sense to deny them housing and allow persons convicted of more serious crimes with double digit re-offense rates to be allowed housing. This violates equal protection.  Lifetime registration does not equal dangerous or more prone to re-offend universally among the states.  The federal government has no right to say it does.  Again strictly or in an implied sense.

* * *

To deny someone housing now because of a crime being convicted of in 1993 and at a time they wouldn't have been denied housing is that "after the fact" punishment?

* * *

4

The Plaintiff request[s] that the court apply the Mendoza tests as per <u>Smith v. Doe</u> and drawn from <u>Kennedy v. Mendoza-Martinez</u>, 538 US 84 and 377 US 144 respectively to 42 USC 13663 and its accompanying administrative law in 24 CFR and FR to find if the statute on its face or implied is retroactively punitive or in violation of equal protection or of Calder [v. Bull, 3 U.S. 386 (1798)].

(<u>Id.</u> at 1-3).

The undersigned construes Plaintiff's Motion for Summary Judgment to be raising two claims.  First, that the restriction against providing Section 8 housing assistance to lifetime registered sex offenders, as stated in 42 U.S.C. § 13663, violates the Equal Protection Clause of the United States Constitution, and second, that the retroactive application of 42 U.S.C. § 13663 to persons convicted prior to its enactment violates the Ex Post Facto Clause of the United States Constitution.

On May 8, 2006, Defendant filed a Motion to Dismiss (# 22), asserting that Plaintiff has failed to allege a viable constitutional claim, either in his original complaint or in his Motion for Summary Judgment.  Defendant asserts that the restriction against the receipt of federal housing benefits by lifetime registered sex offenders is a valid funding condition under the "spending clause" of the United States Constitution and that there is a rational basis for such a restriction, and that Plaintiff has not demonstrated that he is a member of a suspect class or that any of his fundamental rights have been abridged, in order to warrant a higher level of scrutiny of the statute.

5

On May 24, 2006, Plaintiff filed a document entitled "Objection and Motion for Full Adjudication" (# 24) and a Memorandum in support thereof (# 25).  In those documents, Plaintiff disputes Defendant's assertion that he is not a member of a "class," and further asserts that section 13663 "lacks any reasonable basis." (# 25 at 1-2).

On June 14, 2006, Defendant filed a Reply Memorandum in response to Plaintiff's "Objection and Motion for Full Adjudication." (# 26).  In that Reply, Defendant clarifies that the proper inquiry in this matter is whether the statute or regulation in question is "rationally related to a legitimate governmental purpose."  See Heller v. Doe, 509 U.S. 312 (1993). The reply brief further asserts that "any reasonably conceivable state of facts that could provide a rational basis for the classification," is all that is required to withstand an equal protection challenge.  F.C.C. v. Beach Communications, Inc., 508 U.S. 307 (1993).

## STANDARDS OF REVIEW

For purposes of Defendant's Motion to Dismiss, the Complaint must be construed in a light most favorable to Plaintiff and its allegations taken as true.  Only if it appears that Plaintiff could prove no set of facts in support of his claim which would entitle him to relief should the motion be granted."  Brock & Davis Co. v. Charleston Nat'l Bank, 443 F. Supp. 1175 (S.D. W. Va. 1977).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings and evidence of record show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The undersigned will address the pending motions under these standards.

## ANALYSIS

### A.    The Statutes and Regulations

Section 1437f(a) of Title 42 of the United States Code provides as follows:

> For the purpose of aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing, assistance payments may be made with respect to existing housing in accordance with the provisions of this section.

42 U.S.C. § 1437f(a).

As noted in Defendant's Motion to Dismiss, as part of the Quality Housing and Work Responsibility Act of 1998, Congress enacted provisions providing for the screening of applicants for federally assisted housing, including the ineligibility of certain persons, such as "dangerous sex offenders."  Specifically, 42 U.S.C. § 13663 provides:

> (a) In general

> Notwithstanding any other provision of law, an owner of federally assisted housing shall prohibit admission to such housing for any household that includes an individual who is subject to a lifetime registration requirement under a State sex offender registration program.

7

Subsections (b) and (c) of this section govern how the screening should be conducted, and subsection (d) provides the person applying for public housing assistance with an opportunity to dispute the accuracy and relevance of the sex offender registration information before any adverse action may be taken.  42 U.S.C. § 13663.

The United States Department of Housing and Urban Development ("HUD"), under its rulemaking authority, adopted regulations found in 24 C.F.R. § 960.204, which govern the "denial of admission for criminal activity or drug abuse by household members."  These regulations govern the screening of applicants, or their family members who will be residing in the housing, to determine if they have engaged in drug-related or violent criminal activity, have abused alcohol, have engaged in fraud in connection with any federal housing program, or are subject to lifetime sex offender registration.

Section 960.204(a)(4) specifically addresses the denial of admission to persons subject to a lifetime sex offender registration requirement.  That section states:

> The PHA must establish standards that prohibit admission to the PHA's public housing program if any member of the household is subject to a lifetime registration requirement under a State sex offender registration program.  In the screening of applicants, the PHA must perform necessary criminal history background checks in the State where the housing is located and in other States where household members are known to have resided.

42 C.F.R. § 960.204(a)(4).

**B.   Validity under the Spending Clause**

In its Motion to Dismiss, Defendant first asserts that:

> Section 8 housing is a federally funded assisted housing
> program pursuant to Article 1, Section 8, Clause 1 of the
> United States Constitution, referred to as the "spending
> clause" and such funding falls within the power of
> congress to provide for the common defense and general
> welfare of the United States. The limitations and
> conditions imposed upon the recipients of federal funds
> is within the power of Congress incident to the enabling
> act. See Housing Authority [of the City of] Fort Collins
> v. United States, 980 F.2d 624 (10th Cir. 1992). The
> funds provided by Congress are conditioned, permissibly
> so, upon compliance with the terms of eligibility imposed
> by Congress. Congress has the power "to further broad
> policy objectives by conditioning receipt of federal
> monies upon compliance by the recipient with federal
> statutory and administrative objectives." Id. (quoting
> South Dakota v. Dole, 483 U.S. 203, 206 (1987)).

(# 22 at 3-4).

In Dole, the Supreme Court reiterated that there are several
general limitations to Congress's spending power: First, the
exercise of the spending power must be in furtherance of "the
general welfare;" second, the condition must be unambiguously
stated, so that the states may "exercise their choice knowingly,
cognizant of the consequences of their participation;" and third,
the condition must be related to "the federal interest in
particular projects or programs." 483 U.S. at 207-208 (other
citations omitted). The Supreme Court further cautioned that
"other constitutional provisions may provide an independent bar to
the conditional grant of funds." Id. at 208.

In Housing Authority of the City of Fort Collins v. United
States, the Tenth Circuit upheld certain funding conditions imposed

9

upon a local housing authority under the Housing Act of 1937, 42 U.S.C. § 1437, and the amendments thereto, enacted as part of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 42 U.S.C. § 1437b.  Those conditions included the maintenance of properties as low-income housing, limitations on rents, and the prohibition against discrimination in housing.  The Tenth Circuit found that those conditions were well within Congress's "broad policy objectives" of furthering the general welfare, and did not run afoul of any "independent constitutional bar" to the conditional grant of federal funds.  980 F.2d at 629 (citing Dole, 483 U.S. at 209).  The court also specifically found that "public housing certainly is a social welfare program for the public benefit."  Id.

As stated previously herein, Congress's purpose in providing low-income housing assistance, as set forth in 42 U.S.C. § 1437f, was to aid low-income families in obtaining "a decent place to live."  Similar to the conditions upheld in Fort Collins, conditioning a public housing authority's receipt of federal funding upon the prohibition of lifetime registered sex offenders is related to the federal interest in providing low-income families with a decent place to live, and is in furtherance of "the general welfare."  Moreover, as addressed more specifically infra, the undersigned is not aware of any "independent constitutional bar" to this unambiguously stated condition upon federal funding.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the exclusion of lifetime registered sex offenders from receiving federal housing assistance is a valid condition placed on federal funding eligibility by Congress in furtherance of its spending power for the general welfare. Thus, the undersigned will turn to Plaintiff's other constitutional claims.

C.   **Plaintiff's Equal Protection Claim**

As noted by the United States Supreme Court in <u>Schweiker v. Wilson</u>, 450 U.S. 221, 230 (1981):

> The equal protection obligation imposed by the Due Process Clause of the Fifth Amendment is not an obligation to provide the best governance possible * * * * Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, areas in which the judiciary then has a duty to intervene in the democratic process, this Court properly exercises only a limited review power over Congress, the appropriate representative body through which the public makes democratic choices among alternative solutions to social and economic problems. See <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed.2d 16 (1973). At the minimum level, this Court consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives. See, *e.g.*, <u>Dandridge v. Williams</u>, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed.2d 491 (1970); <u>Matthews v. De Castro</u>, 429 U.S. 181, 97 S. Ct. 431, 50 L. Ed.2d 389 (1976)[known as the "rational basis test"].

Thus, section 13663 will be presumed to be valid, and will be subject to the rational basis test, unless Plaintiff can demonstrate either that he is a member of a suspect class, or that some fundamental right has been abridged by this legislation.

11

Plaintiff's equal protection claim appears to be centered around his assertions that there is "no uniform standard of who is or isn't a lifetime registree" and that "the government cannot constitutionally decide where someone can and cannot live." (# 2 at 1).   Furthermore, Plaintiff asserts that this statutory provision denies housing assistance to sex offenders, when persons convicted of "more serious crimes with double-digit re-offense rates" are permitted to receive housing assistance.  (<u>Id.</u> at 2).

To the extent that Plaintiff is asserting that sex offenders are a suspect or quasi-suspect class, neither the United States Supreme Court, nor the Fourth Circuit, has directly addressed this specific issue.   However, all of the courts that have addressed this issue have found that they are not.  <u>See</u>, *e.g.*, <u>United States v. Lemay</u>, 260 F.3d 1018, 1030-31 (9th Cir. 2001); <u>Roe v. Marcotte</u>, 193 F.3d 72 (2d. Cir. 1999); <u>Artway v. Atty. Gen.</u>, 81 F.3d 1235 (3d. Cir. 1996); <u>Rublee v. Fleming</u>, 160 F.3d 213 (5th Cir. 1998); <u>Cutshall v. Sundquist</u>, 193 F.3d 466 (6th Cir. 1999); <u>Riddle v. Mundragon</u>, 83 F.3d 1197 (10th Cir. 1996); <u>Doe v. Moore</u>, 410 F.3d 1337 (11th Cir. 2005)(sex offenders are not a suspect class for purposes of equal protection analysis).   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff is not a member of a suspect class.

Likewise, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff cannot show that he has been denied a fundamental right.   As asserted by Defendant in its Motion to

12

Dismiss, the possibility of receiving federal housing assistance under 42 U.S.C. § 1437f does not rise to the level of a constitutionally-protected property interest. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972)(property interest must arise from an independent source, such as state law); Phelps v. Housing Auth. of Woodruff, 742 F.2d 816, 822 (4th Cir. 1984)(prospect of receiving housing assistance merely an expectation, not an entitlement arising to the level of a constitutionally-protected interest). (# 22 at 5). Thus, no fundamental property interest has been abridged.

To the extent that Plaintiff is alleging that he has been denied a liberty interest by claiming that "the government cannot constitutionally decide where someone can and cannot live" (# 2 at 1), Defendant also asserts in its Motion to Dismiss that section 13663 "imposes no impediment to travel or restricting of movement" and Plaintiff is not prohibited from residing anywhere "except federally-subsidized, multi-family housing." (# 22 at 5). Thus, no fundamental liberty interest has been infringed by 42 U.S.C. § 13663.

Therefore, the undersigned proposes that the presiding District Judge **FIND** that 42 U.S.C. § 13663 is subject to rational basis scrutiny. The court must now determine whether the classification drawn by the statute is rationally related to a legitimate governmental interest. In Schweiker, the United States Supreme Court reiterated:

13

The Court has said that, although this rational-basis standard is "not a toothless one," Matthews v. Lucas, 427 U.S. 495, 510, 96 S. Ct. 2755, 49 L. Ed.2d 651 (1976), it does not allow us to substitute our personal notions of good public policy for those of Congress:

> "In the area of economics and social welfare, a State does not violate the Equal Protection Clause [and correspondingly the Federal Government does not violate the equal protection component of the Fifth Amendment] merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequity.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S. Ct. 337, 340, 55 L. Ed.2d 369]." Dandridge v. Williams, 397 U.S., at 485, 90 S. Ct., at 1161.

450 U.S. at 234. The Court further noted that "'the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one.'" Id. at 234-235 (quoting Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 314 (1976)).

Defendant addressed this issue in his Motion to Dismiss, stating:

> Plaintiff is ineligible for section 8 public assistance only because he is subject to lifetime sex offender registration under West Virginia Code Chapter 15, Article 12, Section 4. He would be likewise ineligible if he were subject to lifetime registration under any state law. There may well be vagaries among the states defining who, upon conviction, becomes a lifetime sex offender registrant, however, the incorporation of a state definition into a federal statute, instead of providing a nationwide uniform definition, does not violate the equal protection clause. United States v. Lender, 985 F.2d 151, 156 (4th Cir. 1993). Lender upheld a statute wherein Congress rejected a nationwide uniform definition of what constituted [a] career criminal in favor of adopting the law of the prosecuting

14

> jurisdiction.  Congress is permitted to leave aspects of
> federal statutes to the judgment of individual states.
> Robertson v. Wegmann, 436 U.S. 584, 593–94 n.11 (1978).
> It is, therefore, not required, nor feasible to create
> some nationwide uniformity on such issues.

(# 22 at 6).  In Lender, the Fourth Circuit stated:

> We find equally unpersuasive the defendant's argument
> that the incorporation of state definitions into the
> federal statute violates the Equal Protection Clause by
> conditioning sentence enhancement on the "arbitrary
> criteria" of where certain predicate offenses were
> committed.  Congress is not constitutionally prohibited
> from leaving some aspects of federal statutes to the
> judgment of individual states.

985 F.2d at 156 n.*.  In this case, it is permissible to allow the

states to determine which sex offenders must register for life

without violating equal protection principles.

The undersigned proposes that the presiding District Judge

**FIND** that the exclusion of lifetime registered sex offenders from

Section 8 housing assistance is rationally related to the

legitimate governmental purpose of aiding low-income families in

obtaining safe and secure public housing.  Accordingly, the

undersigned further proposes that the presiding District Judge **FIND**

that 42 U.S.C. § 13663 does not violate the equal protection

component of the Due Process Clause of the Fifth Amendment.

### D.  Plaintiff's Ex Post Facto Claim

Plaintiff's Motion for Summary Judgment also states:

> To deny someone housing now because of a crime being
> convicted of in 1993 and at that time they wouldn't have
> been denied housing is that 'after the fact' punishment?"

* * *

15

> The Plaintiff request[s] that the court apply the Mendoza tests as per Smith v. Doe and drawn from Kennedy v. Mendoz[a]-Martinez, 538 US 84 and 377 US 144 respectively to 42 USC 13663 and its accompanying administrative law in 24 CFR and FR to find if the statute on its face or implied is retroactively punitive . . . . [in other words, is it an ex post facto law?]

(# 21 at 3-4). Defendant did not address Plaintiff's ex post facto claim at all in its Motion to Dismiss or its reply brief.

Article I, Section 9, Clause 3 of the United States Constitution states "no Bill of Attainder or ex post facto law shall be passed." U.S. Const. Art. I, § 9, cl. 3. This provision prohibits the passage of any ex post facto law, which can best be defined as one which increases the punishment for a criminal act after it has been committed. See Collins v. Youngblood, 497 U.S. 37 (1990).

In Smith v. Doe, 538 U.S. 84 (2002), the United States Supreme Court discussed the criteria to be used to determine whether a statute is punitive in nature, so that the retroactive application of the statute would violate the Ex Post Facto Clause:

> We must "ascertain whether the legislature meant the statute to establish 'civil proceedings.'" Kansas v. Hendricks, 521 U.S. 346, 361, 117 S. Ct. 2072, 138 L.Ed.2d 501 (1997). If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" Ibid (quoting United States v. Ward, 448 U.S. 242, 248-249, 100 S. Ct. 2636, 65 L. Ed.2d 742 (1980)). Because we "ordinarily defer to the legislature's stated intent," Hendricks, supra, at 361, 117 S. Ct. 2072, "'only the clearest proof' will suffice to override legislative intent and transform what has

16

been denominated a civil remedy into a criminal penalty,"
<u>Hudson v. United States</u>, 522 U.S. 93, 100, 118 S. Ct.
488, 139 L. Ed.2d 450 (1997)(quoting <u>Ward</u>, <u>supra</u>, at 249,
100 S. Ct. 2636)[other citations omitted].

538 U.S. at 92.  This test is also known as the "intents-effects"
test.

In <u>Smith</u>, the Court further stated that "[t]he courts 'must
first ask whether the legislature, in establishing the penalizing
mechanism, indicated either expressly or impliedly a preference for
one label or the other.'"  <u>Id.</u> at 93 (quoting <u>Hudson v. United
States</u>, 522 U.S. 93, 99 (1997)).  As previously noted, 42 U.S.C. §
1437f provides for low-income housing assistance "[f]or the purpose
of aiding low-income families in obtaining a decent place to live
and of promoting economically mixed housing . . . ."  42 U.S.C. §
1437f(a).  Sections 13661-13664 of Title 42 concern the screening
and exclusion of certain applicants for federally-assisted housing,
including lifetime registered sex offenders.  These sections are
located in Subchapter V of Chapter 135 of Title 42, which is
entitled "Safety and Security in Public and Assisted Housing," and
appear to have taken effect on October 1, 1999, after Plaintiff was
convicted of third degree sexual assault, and after he was required
to register for life as a sex offender in West Virginia.

Other than the fact that these statutes appear in a subchapter
concerning "Safety and Security in Public and Assisted Housing,"
which would seem to indicate a regulatory, non-punitive purpose,
these statutes are silent as to Congress's purpose or intent in

17

enacting them.   The specific regulation contained in 24 C.F.R. §
960.204(a)(4) is also silent as to intent.   Thus, the undersigned
finds it necessary to address the effects prong of the "intents-
effects" test to determine the punitive nature of section 13663.

In Smith, the Court referred to seven factors addressed in its
prior decision in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963)
as being "useful guideposts" in determining the constitutionality
of statutory provisions such as the one in question here.   Those
factors are:

> (1) whether the sanction involves an affirmative
> disability or restraint; (2) whether it has historically
> been regarded as punishment; (3) whether it comes into
> play only on a finding of scienter; (4) whether its
> operation will promote the traditional aims of punishment
> - that is, retribution and deterrence; (5) whether the
> behavior to which it applies is already a crime; (6)
> whether an alternative purpose to which it may rationally
> be connected is assignable for it; and (7) whether it
> appears excessive in relation to the alternative purpose
> assigned.

372 U.S. at 168-69.

The Supreme Court has provided no real guidance on the weight
to be accorded each factor, other than to state that, generally, no
single factor is determinative of the issue.   Hudson v. United
States, 522 U.S. 93, 101 (1997).   It appears to the undersigned
that the United States Supreme Court has never addressed the
constitutionality of section 13663, or any of the other
exclusionary provisions of this subchapter, in the face of an ex
post facto challenge.   Thus, the undersigned will undertake a de
novo review, using the Mendoza-Martinez factors as a guideline.

18

In <u>Doe v. Miller</u>, 405 F.3d 700 (8th Cir.), <u>cert. denied</u>, 126 S. Ct. 757, No. 05-428 (2005), the Eighth Circuit addressed an ex post facto challenge to an Iowa statute that prohibited convicted sex offenders whose crimes involved a minor from residing within 2,000 feet of a school or child care facility.  This appears to be the most analogous residency restriction to the case at bar.  The undersigned will also use the analysis in <u>Doe</u> as a guide.

From the outset, it is apparent that the residency restriction in question here applies to lifetime registered sex offenders.  Thus, it is apparent that it applies to behavior that was already a crime.

Turning to whether there is any historical use of residency restrictions as punishment, in <u>Doe v. Miller</u>, the appellees argued that a residency restriction, such as the one at issue in that case, is the equivalent of banishment, which has historically been considered a form of punishment.  405 F.3d at 719.  The Eighth Circuit rejected that argument, however, finding that the statute at issue in that case "restricts only where offenders may reside. It does not 'expel' the offenders from their communities or prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other an establishing a residence."   <u>Id.</u> Accordingly, the Eighth Circuit found that the residency restriction at issue in <u>Doe v. Miller</u> was "not of a type that is traditionally punitive." <u>Id.</u> at 720.

19

The statute at issue in the instant case is not even as broad as the residency restriction in Doe v. Miller. It simply prohibits the eligibility of lifetime registered sex offenders for a Public Housing Authority's public housing program. Under the same rationale as that used in Doe, such a residency restriction is not equivalent to banishment, and is not punitive in nature.

As to whether the sanction involves an affirmative disability or restraint, citing Smith v. Doe, the court in Doe v. Miller stated:

> While restrictive laws are not necessarily punitive, they are more likely to be so; by contrast, "if the disability or restraint is minor and indirect, its effects are unlikely to be punitive." [538 U.S. at 100, 123 S. Ct. 1140]. For example, sex offender registration laws, requiring only periodic reporting and updating of personal information, do not have a punitive restraining effect. Id. at 102, 123 S. Ct. 1140. At the same time, civil commitment of the mentally ill, though extremely restrictive and disabling to those who are committed, does not necessarily impose punishment because it bears a reasonable relationship to a "legitimate nonpunitive objective," namely protecting the public from mentally unstable individuals. Hendricks, 521 U.S. at 363, 117 S. Ct. 2072.

> [The Iowa statute] is more disabling than the sex offender registration law at issue in Smith v. Doe, which had not "led to substantial occupational or housing disadvantages for former sex offenders that would not have otherwise occurred through the use of routine background checks by employers and landlords." 538 U.S. at 100, 123 S. Ct. 1140. * * * The residency restriction is certainly less disabling, however, than the civil commitment scheme at issue in Hendricks, which permitted complete confinement of affected persons. In both Smith and Hendricks, the Court considered the degree of the restraint involved in light of the legislature's countervailing nonpunitive purpose, and the Court in Hendricks emphasized that the imposition of an affirmative restraint "does not inexorably lead to the

> conclusion that the government has imposed punishment."
> 521 U.S. at 363, 117 S. Ct. 2072 (internal quotation
> omitted).  Likewise, here, while we agree with the Does
> that [the Iowa statute] does impose an element of
> affirmative disability or restraint, we believe this
> factor ultimately points us to the importance of the next
> inquiry: whether the law is rationally connected to a
> nonpunitive purpose, and whether it is excessive in
> relation to that purpose.

405 F.3d at 720-721.

In the instant case, because section 13663 prohibits lifetime registered sex offenders from being eligible for public housing assistance, it certainly imposes some degree of disability or restraint.  Likewise, it can be assumed that such a restraint will have some deterrent effect, and is at least potentially retributive in effect.  Thus, as in <u>Doe v. Miller</u>, the undersigned will look to the allegedly non-punitive purpose of the statute and determine whether the residency restriction is excessive in relation to that purpose before determining whether the statute is punitive.

Section 13663 is one of several residency restriction provisions found in Subchapter V of Chapter 135 of Title 42.  As stated previously herein, this subchapter addresses "Safety and Security in Public and Assisted Housing."  In addition to lifetime registered sex offenders, this subchapter makes ineligible for federal housing assistance persons who have been evicted from federally assisted housing because of drug-related criminal activity within a three-year period, those that the PHA or owner determines to have illegally used a controlled substance, or those that the PHA or owner has reasonable cause to believe are using

illegal controlled substances or abusing alcohol, which "may interfere with the health safety, or right to peaceful enjoyment of the premises by other residents."   These provisions, taken as a whole, clearly indicate a regulatory and non-punitive purpose for these exclusions.

The United States Supreme Court has stated that "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" 538 U.S. at 103 (quoting McKune v. Lile, 536 U.S. 24, 34 (2002). Plaintiff's documents filed in this case, however, assert that there is no rational basis for the complete restriction of all lifetime sex offender registrants because the re-offense rate for sex offenders is not as high as the public has been led to believe, and because residency restrictions, such as the one at issue here, may actually cause an increase in the rate of recidivism, as they may prohibit past offenders from residing in a stable environment. Plaintiff has offered the court two exhibits in support of his claims.

The first is an amicus curiae brief filed in support of the petition for certiorari in the Doe v. Miller case.   The brief was filed by the Association for the Treatment of Sexual Abusers.   The brief contends that "research demonstrates that stability and support increase the likelihood of successful reintegration for former offenders," and that residency restrictions for sex offenders actually undermine the public policy for the protection of children because such restrictions may cause isolation,

22

unemployment, depression, and instability, which correlate with increased recidivism.  (# 21, Ex. 1).  The brief further asserts that there is no evidence that sex offender residency restrictions actually protect children from sexual abuse, especially in light of the fact that, according to a 2000 Department of Justice study, "93% of child sexual abuse victims knew their abuser, 34.2% were family members, and 58.7% were acquaintances."  (Id.)

Plaintiff's second exhibit is a Department of Justice study of recidivism rates over a three year period of sex offenders who were released from prison in 1994 in 15 states.  According to the study, 5.3% of the 9,691 sex offenders who were released in those states in 1994 were rearrested for a new sex crime (2.2% of those were child molesters who committed another crime).  Plaintiff asserts that this study supports a finding that residency restrictions based upon the allegedly high re-offense rate of sex offenders are clearly unjustified and excessive, and do not take into account whether a particular offender is actually "dangerous."  (## 21 and 25).

In determining whether there is a "rational connection" between the restrictions and the legislature's non-punitive purpose, the undersigned looks again to the decisions in Smith v. Doe and Doe v. Miller.  In Doe v. Miller, the court addressed this issue as follows:

> The absence of a particularized risk assessment, however,
> does not necessarily convert a regulatory law into a
> punitive measure, for "[t]he Ex Post Facto Clause does

not preclude a State [or, in this case, Congress] from
making reasonable categorical judgments that conviction
of specified crimes should entail particular regulatory
consequences." Smith v. Doe, 538 U.S. at 103, 123 S. Ct.
1140.   The Supreme Court over the years has held that
restrictions on several classes of offenders are
nonpunitive, despite the absence of particularized
determinations, including laws prohibiting the practice
of medicine by convicted felons, Hawker v. New York, 170
U.S. 189, 197, 18 S. Ct. 573, 42 L. Ed.2d 1002 (1898),
laws prohibiting convicted felons from serving as
officers or agents of a union, De Veau v. Braisted, 363
U.S. 144, 160, 80 S. Ct. 1146, 4 L. Ed.2d 1109
(1960)(plurality opinion); id. at 160-61, 80 S. Ct. 1146
(opinion of Brennan, J.), and of course laws requiring
registration of sex offenders.  Smith v. Doe, 538 U.S. at
106, 123 S. Ct. 1140.

In this case, we conclude that a categorical rule is
consistent with the legislature's regulatory purpose and
not "excessive" within the meaning of the Supreme Court's
decisions.

405 F.3d at 721-722.

Similarly, here, the undersigned proposes that the presiding
District Judge **FIND** that the restriction of all lifetime registered
sex offenders from being eligible for federal housing assistance,
as required by 42 U.S.C. § 13663, is not an excessive measure in
light of Congress's regulatory and non-punitive objective of
providing low-income families with decent, safe, and secure
housing.  In sum, 42 U.S.C. § 13663 is a non-punitive, regulatory
provision.

Accordingly, the undersigned further proposes that the
presiding District Judge **FIND** that the retroactive application of
the regulatory and non-punitive requirements of 42 U.S.C. § 13663
does not violate the Ex Post Facto Clause of the United States

Constitution.

**RECOMMENDATION**

For all of the reasons stated herein, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Complaint and related documents have failed to state a claim upon which relief can be granted, and that Plaintiff is not entitled to judgment as a matter of law on his claims. Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendant's Motion to Dismiss (# 22) and **DENY** Plaintiff's Motion for Summary Judgment (# 21) and Plaintiff's Motion for Full Adjudication (# 24).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and counsel of record.

February 14, 2007
Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge